UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**NAZIR AL-MUJAAHID,**
        Plaintiff,

    v.                              Case No. 12-CV-00484

**TIMOTHY BANDT and JON PARKER,**
        Defendants.

## DECISION AND ORDER

Plaintiff Nazir Al-Mujaahid brings this action against Milwaukee police officers Timothy Bandt and Jon Parker under 42 U.S.C. § 1983 and state common law. Before me now is defendants' motion for summary judgment.

### I. BACKGROUND[1]

On March 21, 2011, at approximately 11:40 a.m., plaintiff was driving west on Capitol Drive in Milwaukee near 55th Street in a rented 2011 Chevrolet Camaro. Capitol Drive is a large street with three lanes of traffic in each direction and a median strip. In addition to plaintiff's car, other vehicles were proceeding west on Capitol Drive.[2] One such

---

[1] Plaintiff denies most of Defendants' Proposed Findings of Fact but does not cite to the record when doing so. As a result, defendants argue that all of their findings of fact should be deemed admitted. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion."). I will, however, overlook plaintiff's error because he did cite to the record in his Statement of Additional Material Facts, and those citations make it clear which parts of the record plaintiff is relying on to deny defendants' factual findings.

[2] Plaintiff asserts that there were only four other cars on the road but also admits Defendants' Proposed Finding of Fact ¶ 13, which states that "Officer Bandt observed many other vehicles traveling westbound at that location."

vehicle was defendants' unmarked squad car which was equipped with emergency lights and a siren.

Defendants state that their car was in the center lane when they heard plaintiff rev his engine behind them and saw him merge quickly from the center lane into the right lane and drive past them at a speed that appeared to be much greater than the posted 30-mile-per-hour speed limit. They became concerned about plaintiff's driving because of the congestion on the road and decided to conduct a traffic stop. Defendants state that they had to accelerate to almost 70 miles per hour to catch plaintiff. They were not able to pace plaintiff's car, but Bandt estimates that it was traveling between 50 and 65 miles per hour. Plaintiff denies revving his engine, denies changing lanes and denies passing defendants at a high rate of speed. He says he was already in the right lane when he reached 55th Street because he was anticipating making a right turn and was only going about 35 miles per hour.[3]

Defendants state that they caught plaintiff while he was on Capitol Drive and activated their emergency lights and siren, but that plaintiff did not stop. Plaintiff states that he did not stop because he did not see any flashing lights or hear a police siren. He admits that he had his windows up and was listening to loud music but maintains that he would have heard a police siren. Plaintiff made a right turn onto 60th Street and a quick left turn into an alley one-half block north of Capitol Drive. Defendants followed him into the alley

---

[3] In their proposed findings of fact, defendants say that plaintiff admits "that he accelerated from a stop to a speed of 35 M.P.H. in just a few seconds, after pulling away from a stop at the intersection of 55th and Capitol Drive." (Defs.' Proposed Findings of Fact ¶ 110, ECF No. 27.) This makes it sound like plaintiff accelerated quickly, but the cited portion of plaintiff's deposition indicates that "a few seconds" is eight to ten. (Dep. Of Nazir Al-Mujaahid 27, ECF No. 27-1.)

where plaintiff turned right at a T-intersection and pulled into a parking space behind a house.

Plaintiff states that he noticed that there was a police car with flashing lights behind him just before he pulled into the parking space. Upon seeing the officers, he states that he left the car's motor running and reached into his pocket for his wallet to get his driver's license. Defendants state that plaintiff made "furtive" movements inside the car including ducking down and reaching to the left and right of the center console. (Defs.' Proposed Findings of Fact ¶ 35.) As a result, defendants state that they became concerned that plaintiff was hiding or retrieving a weapon. They parked their squad car behind plaintiff's vehicle, and Parker approached the passenger side of plaintiff's car with a rifle and Bandt the driver's side with a handgun.

Defendants state that their guns were angled toward the ground as they approached, but plaintiff states that they were pointed at his head. When he saw Parker with the rifle, he claims Parker yelled, "I'll f---in' kill you! What the f--- is wrong with you?!" (Pl.'s Statement of Add'l Material Facts ¶ 6, ECF No. 31.) Defendants deny this allegation. They say that Bandt loudly identified himself as a Milwaukee police officer and ordered plaintiff to turn off the car and show his hands. When plaintiff did not respond, Bandt said, "Don't make me f---ing kill you." (Defs.' Proposed Findings of Fact ¶ 62.) Bandt says that he used this "verbal stun" to shake plaintiff so that he would comply with the officers' orders. Plaintiff put the car in park and raised his hands, and Bandt opened the driver's side door.

When plaintiff attempted to undo his seatbelt, Bandt told him to stop moving, holstered his gun and reached down and unfastened the belt himself. According to plaintiff,

3

Bandt said, "What the f--- are you doing? Do you want to f---ing die today?" and ground his right elbow into plaintiff's chest while he was undoing the belt. (Pl.'s Statement of Add'l Material Facts ¶ 13.) Plaintiff also says that Parker threatened to "blow his f---ing balls off" while pointing the rifle at plaintiff's midsection. (*Id.* ¶ 15.) Once the seatbelt was off, plaintiff states that Bandt grabbed his shirt and jacket and pulled him out of the car, causing his kufi (Muslim religious headgear) to fall off, and that Bandt ordered him to stand spread eagle against the car and searched him while Parker kept his rifle aimed at plaintiff's head. Throughout the search, plaintiff claims that defendants repeatedly threatened to kill him and screamed obscenities at him. Parker admits he may have warned plaintiff that he would shoot if necessary.

During the search, Bandt put his hands into the pockets of plaintiff's jacket and pants. He found a rare coin in plaintiff's pocket, inspected it, asked plaintiff what kind of coin it was and returned it to plaintiff. Plaintiff claims Bandt also grabbed his testicles, pulled his testicles hard and hit him in his testicles two or three times. Bandt then handcuffed plaintiff very tightly and asked Parker to pat plaintiff down to double-check that he was not carrying any weapons. Parker complied, and plaintiff says Bandt roughly lifted plaintiff's handcuffed arms up behind his back so Parker could do the second patdown. Plaintiff says this pulled on his left shoulder and hurt badly. Bandt then put plaintiff in the back of the squad car.[4] Plaintiff says he asked Bandt to loosen his handcuffs, but Bandt

---

[4] Plaintiff says Bandt "squeezed" him into the backseat of the car but does not identify anything in the backseat and concedes that Parker moved the passenger seat forward so that plaintiff would have more room. (Pl.'s Statement of Add'l Material Facts ¶¶ 37–38.)

4

responded, "Shut the f--- up." (*Id.* ¶ 39.) Plaintiff says the handcuffs were so tight they made his hands feel numb and left indentations on his wrists.

After plaintiff was in the squad car, Bandt searched the passenger compartment of plaintiff's car, but did not find any weapons or other contraband. Meanwhile, Parker conducted a wanted check for plaintiff and found that the Milwaukee County Sheriff's Department had a warrant for plaintiff. Parker asked the Sheriff's Department to confirm that the warrant was valid. While he was waiting for a response, two more officers arrived on the scene. Bandt took plaintiff out of the squad car and showed the newly arrived officers the coin in his pocket. He also made plaintiff take off his shoes so he could check the insoles and pat down plaintiff's socks. Bandt then returned plaintiff to the squad car, and, according to plaintiff, began searching plaintiff's entire car including the trunk. Parker did not help search the car.[5] A few minutes later, defendants learned from the Sheriff's Department that the warrant for plaintiff was not valid. Plaintiff asked to be released but says defendants kept him handcuffed for another five minutes before releasing him without a citation. Plaintiff was detained for a total of about 20 minutes.

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-movant, here plaintiff, and may grant the motion only if no

---

[5] In his statement of additional facts, plaintiff claims Parker helped search the car, but in response to Defendants' Proposed Finding of Fact ¶ 103 he admits that "Officer Parker did not search [plaintiff's] car." (Pl.'s Resp. to Defs.'s Proposed Findings of Fact ¶ 103, ECF No. 29.) This admission is binding on plaintiff. *See* Fed. R. Civ. P. 56(e)(2).

5

reasonable juror could find for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**A. Section 1983 Claims**

To prevail under § 1983, plaintiff must prove: 1) he was deprived of a right secured by the Constitution or laws of the United States, and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Defendants concede they were acting under color of state law during all their interactions with plaintiff because they were acting as officers of the Milwaukee Police Department. The question is whether a reasonable juror could conclude that defendants violated plaintiff's federal rights.

Plaintiff's first claim is that defendants violated his Fourth Amendment rights by seizing his person. He argues that the seizure of his person as part of the traffic stop was unreasonable because defendants had no basis for conducting the stop. Defendants argue that the seizure was reasonable because they saw plaintiff violate three traffic laws. They claim they saw him drive recklessly on a busy road, *see* Wis. Stat. § 346.62(2) (making it illegal to "endanger the safety of any person or property by the negligent operation of a vehicle"), at a speed that greatly exceeded the posted speed limit, *see* Wis. Stat. § 346.57(5) ("[N]o person shall drive a vehicle in excess of any speed limit established pursuant to law by state or local authorities."), and fail to stop when defendants activated their emergency lights and siren, *see* Wis. Stat. § 346.195(2t) (requiring a driver to pull over "as promptly as safety reasonably permits" when he or she receives "a visible or audible signal to stop his or her vehicle from a traffic officer or marked police vehicle").

6

Defendants correctly assert that if they had a reasonable suspicion that plaintiff had committed a traffic offense, the Fourth Amendment did not bar them from conducting an investigatory traffic stop and temporarily seizing plaintiff. *See U.S. v. Lyons*, 733 F.3d 777, 782 (7th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)); *see also U.S. v. Uribe*, 709 F.3d 646, 649–50 (7th Cir. 2013) (a court must evaluate "reasonable suspicion based on the totality of the circumstances known to the officer at the time the stop is made"). However, plaintiff denies all of defendants' allegations. Plaintiff states that he was driving in a safe manner at a speed only slightly above the posted speed limit and that defendants did not activate their lights or siren until just before he parked. Since there are genuine disputes of fact, defendants are not entitled to summary judgment on plaintiff's first claim.

Plaintiff's second claim is that defendants violated his Fourth Amendment rights by searching his person. Defendants argue they had a right to search plaintiff because, consistent with the Fourth Amendment, a police officer may frisk the driver of a car for weapons during a traffic stop if the officer has "a reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). A "reasonable suspicion" that someone is armed and dangerous exists if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Defendants say they were concerned that plaintiff might be armed and dangerous because plaintiff did not stop when they activated their lights and siren, left his engine running after he parked and made furtive movements inside his car as the officers approached. The problem again is that plaintiff disputes defendants' allegations, which means that factual questions exist that need to be resolved by a jury. Plaintiff says defendants did not signal him to stop and

7

maintains that the only movement he made while sitting in his car was to reach into his pocket and retrieve his wallet. That defendants found no weapons or contraband on plaintiff's person or in his car tends to support plaintiff's assertions.

Moreover, even if defendants had legitimate grounds for frisking plaintiff for weapons, a reasonable jury could find that the scope of the search conducted by Bandt was unreasonable. A frisk for weapons is not a full-blown search of someone's person. It "is not justified by any need to prevent the disappearance or destruction of criminal evidence," and it "must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of a police officer." *Terry*, 392 U.S. at 29. In his statement of additional facts, plaintiff says Parker frisked plaintiff for weapons but indicates that Bandt's search of plaintiff was more extensive. Plaintiff claims Bandt put his hands in all of plaintiff's pockets, removed and examined a small coin, and asked plaintiff to remove his shoes so he could check the insoles and pat down plaintiff's socks. A reasonable jury could find that this was more than a limited search for weapons. *See id.* at 29–30 (finding that a frisk for weapons was reasonable where the officer patted down the outer layer of a person's clothing and did not reach into the suspect's pocket until he felt a gun). Therefore, I will deny defendants' motion for summary judgment on plaintiff's second claim.

Plaintiff's third claim is that defendants violated his Fourth Amendment rights by searching his car. Parker is entitled to summary judgment on this claim because plaintiff admits that Parker did not search the car. Defendants argue that Bandt is also entitled to summary judgment because he had a right to search the car under *Michigan v. Long*, 463 U.S. 1032 (1983). In *Long*, the Supreme Court held that a police officer may search "the

8

passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, . . . if the police officer possesses a reasonable belief . . . that the suspect is dangerous and . . . may gain immediate control of weapons." *Id.* at 1049.

Plaintiff argues that *Long* does not apply to this case because Bandt secured plaintiff in the back of the squad car before he conducted the vehicle search. He relies on *Arizona v. Gant*, which states that a police officer may search a vehicle for weapons incident to a recent occupant's arrest only if the arrestee is unsecured and within reaching distance of the passenger compartment. 556 U.S. 332, 335 (2009). The Court reasoned that a search for weapons incident to an arrest is not justified after an arrestee has been secured because there is no longer a risk that the arrestee will gain access to the vehicle. *Id.* at 343. I find that *Long* is controlling. *Gant* is distinguishable because this case does not involve an arrest. "In the no-arrest case, the possibility of access to weapons in the vehicle always exists since the driver or passenger will be allowed to return to the vehicle when the interrogation is complete." *Id.* at 352 (Scalia, J. concurring); *see also Long*, 463 U.S. at 1051–52 ("[I]f the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.").

Nonetheless, I will deny defendants' motion for summary judgment on plaintiff's third claim. For the reasons already stated, there is a factual dispute about whether Bandt had reasonable grounds for believing that plaintiff had a weapon in his car. There is also a dispute about the scope of Bandt's search. Bandt says he only did a protective sweep for weapons in the areas of the passenger compartment immediately accessible to plaintiff, but plaintiff says Bandt searched the entire car including the trunk for both weapons and other contraband. A reasonable jury could find plaintiff to be credible and conclude that

9

Bandt's search of the car was unreasonable. (*See also* Defs.' Proposed Findings of Fact ¶¶ 98–101 (admitting that "Officer Bandt checked the passenger area of the car for weapons *or contraband*") (emphasis added).)

Plaintiff's fourth and final claim is that defendants violated his Fourth Amendment rights by using excessive force against him. A claim that law enforcement officials used excessive force during an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "This standard requires that a fact finder analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). A court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake" and pay "careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (quoting *Tenn. v. Garner*, 471 U.S. 1, 8 (1985)). The court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Plaintiff claims both Parker and Bandt used excessive force because they pointed their guns at his head and threatened to kill him. He says Bandt only pointed his gun at plaintiff during the first few moments of the encounter but Parker kept his gun aimed at plaintiff's head for several minutes, until Bandt had finished searching plaintiff's person. Pointing a gun at someone and threatening to kill him is a use of deadly force, and use of such force is only reasonable if a police officer has probable cause to believe a person is dangerous or has committed a violent crime. *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000); *see also Baird v. Renbarger*, 576 F.3d 340, 345–47 (7th Cir. 2009) (pointing a submachine gun at suspects who were believed to have committed a nonviolent crime was unreasonable); *U.S. v. Watson*, 558 F.3d 702, 704 (7th Cir. 2009) (Excessive force "might consist of threats that put the arrested (or stopped) person in fear of bodily harm."). Defendants argue that they are entitled to summary judgment on this part of the excessive force claim because they had probable cause to believe plaintiff was dangerous. They again claim that plaintiff's reckless driving, refusal to yield to police and furtive movements inside his vehicle made them think he had a weapon. Plaintiff, of course, denies these allegations. He also points out that he cooperated fully with defendants. (*See* Defs.' Resp. to Pl.'s Statement of Add'l Material Facts ¶ 18 ("Plaintiff was fully cooperative while fearing for his life and kept his hands up and in clear view. Response: Admit.").) Because there is a genuine dispute about whether defendants had a basis for believing that plaintiff was armed and dangerous, summary judgment on this part of the excessive force claim is inappropriate.

Plaintiff further claims that Bandt used excessive force against him because he ground his elbow into plaintiff's chest, pulled him out of the car by his jacket, pulled and hit

11

his testicles during the first patdown, and yanked his handcuffed arms up behind his back during the second patdown. Bandt argues that he is entitled to summary judgment with regard to all of these allegations because he had reason to believe plaintiff was armed and dangerous. He says this gave him the right to remove plaintiff from the vehicle by force, to frisk plaintiff for weapons and to touch plaintiff's genitals as part of the frisk. Since plaintiff denies that Bandt had any basis for believing plaintiff was armed and claims Bandt did more than touch his genitals, I conclude that summary judgment is again inappropriate. (*See* Pl.'s Statement of Add'l Material Facts ¶¶ 25–26 (alleging that Bandt "pulled [plaintiff's] testicles hard" and "hit Plaintiff directly under his testicles two or three times").

Regardless of the merits of plaintiff's § 1983 claims, defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). In order to determine whether defendants are entitled to qualified immunity, I ask "(1) whether the facts, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation." *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012).

I have already found that, taken in plaintiff's favor, the facts establish a violation of his constitutional rights. The only question is whether the rights at issue were clearly established prior to March 21, 2011. I conclude that they were. To prove that a right was clearly established, plaintiff does not have to show that "the very act in question has

12

previously been held unlawful," only that the unlawfulness of it was apparent "in light of pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Based on the cases cited above, I find that the relevant law governing searches and seizures and use of force in the context of an investigatory traffic stop was clearly established long before March 2011. Therefore, I conclude that defendants are not entitled to qualified immunity.

## B. State Law Claims[6]

Plaintiff claims that defendants are also liable under Wisconsin common law for the torts of false imprisonment, assault, battery and trespass to chattels. Defendants assert that they are entitled to statutory immunity from all of these claims under Wis. Stat. § 893.80(4). This statute, which derives from the common law, gives public officers or employees "immunity from liability [under state law] for injuries resulting from the performance of any discretionary act within the scope of their governmental employment." *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 88 (1999).

Plaintiff's only response to defendants' claim of immunity under § 893.80(4) is to argue that the statute does not apply to police officers. This argument is without merit. Section 893.80(4) has been interpreted as giving police officers immunity from liability for their discretionary acts. *See Estate of Cavanaugh by Cavanaugh v. Andrade*, 202 Wis. 2d 290, 315 (1996) ("[A]n officer's decision to initiate or continue a high-speed chase is a discretionary act entitled to immunity."); *see also Sheridan v. City of Janesville*, 164 Wis.

---

[6] I have supplemental jurisdiction over plaintiff's state law claims because they are related to his federal claims. *See* 28 U.S.C. § 1367(a).

2d 420, 427–28 (Ct. App. 1991) (finding that police officers' decisions about whether suspect "should be searched, handcuffed, subjected to force during arrest, and given a breathalyzer" were discretionary decisions that triggered immunity under § 893.80(4)). And I conclude that defendants' decisions to stop, detain, search and use force against plaintiff were discretionary decisions made in the scope of their government employment that give them a right to immunity under § 893.80(4). *See Kierstyn*, 228 Wis. 2d at 91 (distinguishing discretionary acts from "ministerial acts," which are acts that are "absolute, certain and imperative, involving merely the performance of a specific task" where "the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion"). Therefore, I will grant defendants' motion for summary judgment on plaintiff's state law claims.

## II. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (Docket #26) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to plaintiff's claim that Officer Parker unreasonably searched plaintiff's vehicle and as to plaintiff's state law claims against both defendants. The motion is **DENIED** as to the rest of plaintiff's claims.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2013.

                                                                             s/ Lynn Adelman
                                                                             _____
                                                                             LYNN ADELMAN
                                                                             District Judge